Deaderick, J.,
delivered the opinion of the Court.
Thomas Chambliss died in 1854, leaving a last will and testament, in which he devised to his wife, Adelia C., one-third of his real estate, for and during her life, with remainder to the children of his deceased sister. The land of testator, including the part devised to his wife, by proceedings had in the Circuit Court of Shelby county, was sold, and $3,847.74, the proceeds of the one-third devised for life to said Adelia C., were paid to her by the order of the Court, upon the execution of a bond by her, with defendants Speed and Strange as her sureties, for the payment of said sum to the remaindermen, upon the termination of the life estate. The said Speed an’d Strange were permitted by Mrs. Chambliss to receive and retain the money upon their becoming her sureties. Several years after the receipt of the money by Speed and Strange, Mrs. Chambliss intermarried with John Pope, and the money was paid over to him by Strange *198 and Speed, upon the execution by Pope of a bond, with complainant as surety, conditioned to hold the said Strange and Speed harmless upon the bond executed by them as sureties of Mrs. Chambliss, and further binding said Pope to have the said sum of $3,847.74 forthcoming at the death of Mrs. Pope, for distribution amongst those entitled in remainder to said sum. This last named bond was executed 10th February, 1858, and John Pope died in 1865, leaving a will, of which his widow, the said Adelia C., and Andrew Pope are executrix and executor. The complainant files his bill, seeking to be released from his-liability as surety for John Pope, upon the ground that he fears he will finally have to pay the amount,, if not secured now out of the estate of said Pope,, before distribution is made amongst his legatees. It is alleged in this bill that the estate of said Pope is. about to be converted into money and wtll soon thereafter be distributed under his will, and that in the changed condition of Pope’s property since his death,, and since complainant became his surety, he is in great danger of suffering ultimate loss by reason of his suretyship. The bill prays that out of the estate of Pope a fund sufficient to meet the liability of said estate to the remaindermen, may be paid into court and held for that purpose, and for general relief. The material allegations of the bill are admitted in the answer of the executor and executrix; but they insist that the obligation or bond to which complainant is surety, being a charge upon the estate of Pope, they intend to retain in their hands a sum sufficient. *199 to discharge it, when it becomes payable, but that they can not be required to deposit in custody of the court, to await the termination of the life estate, a sum' sufficient for this purpose, any more than for any other debt or obligation of the estate, to fall due at a future day. The remaindermen and the said Strange and Speed, the sureties for Mrs. Chambliss (now Mrs. Pope,) and the executors and heirs at law of John Pope, deceased, are made parties defendants to the bill.
Eor the executors, it is insisted that a surety in an indemnity bond can not, before he is damnified, maintain a bill against his principal for security against probable loss. This is true where it does not appear that any change has taken place in the circumstances of the parties, or that other equitable grounds of relief have intervened, after the execution of the bond. But there are cases in which the peculiar preventive powers of a court of equity are exercised in order to-avoid, ultimate loss to the party invoking the ’protection of the court. While as a general rule, it is also true that the surety is not entitled to be subrogated to the rights of the creditors, until he has actually paid the debt, nor can he have his bill for exoneration against his principal and the creditor until the debt falls due; yet to these general rules of law there are exceptions. The remaindermen, during the continuance of the life estate, have the undoubted- right to be protected against probable danger of loss or destruction of the property, or any hazard of the title: 10 Yerg., 37; 2 Sto. Eq., § 827, § 845. For the purpose of attaining this protection to the rights of *200 , the rpmainderiq^n, , bond with security for the forth p.oming of the , property will be required, or in . the pase of money, an, order to pay it into court may be .praje, and ..interest .raised thereon and jpaid to the tenant ..for l.ife.
Where property is covenanted to be secured for certain .purposes and i,n certain events, and there is danger of its being aliened or squandered, courts of equity will interpose to secure . the property for original purposes, . and to this end .will require security to be given, or will place the property under the control of the court: 1 Sto. Eq., § 730, § 604.
Mrs. Chambliss, the tenant for life, was , required. in the first instance ,t° give bond with security for the forthcoming of the fund, upon the termination of her life estate, before it was paid to her. Upon her marriage with Pope, the money was paid into his hands and he executed a bond, with complainant as his surety, each bond being intended to secure and preserve the fund to the remaindermen who were ultimately entitled to it. The complainant in this case .seeks tlje aid of a court of equity, because he fears .some future probable injury to his rights or interests, not upon the ground that he has paid the debt, nor because an injury has already occurred which requires compensation or other relief. The grounds of apprehension alleged in this case are, that the principal in the bond, John Pope, is dead; that his estate, real and personal, under the directions contained in his will, has been or is about to be converted into money ^and distributed amongst his legatees, and .will thus *201 pass into new and strange hands; that the fund secured is a charge upon said Pope’s estate, for the payment of which a sufficient sum should be set apart and placed into the custody of the court before any distribution is made to the legatees; that when complainant became bound as his surety, John Pope, his principal, was living and had ample property, real and personal, to assure him against probable loss by reason of his suretyship, and by the changed condition of his estate, the means upon which he relied for his indemnity have been greatly diminished; and that he fears he will have the debt to pay, if permitted to remain unprovided for until the termination of the life estate. "Where the principal debtor is insolvent, his surety may proceed against him before paying the debt, for indemnity, or to subject particular assets to the payment of the debt: Adams’ Eq., 270, note 1. So on the same principle, where the principal is dead, the surety may ñle a bill quia timet to compel his executors to exonerate him: Ibid To the same effect are the holdings of this Court in 2 Head, 549, and 1 Heis., 589, and 2 Col., 104. In the last named case, which is cited and approved in the opinion in 1 Heis,, it was held that the surety of a guardian who had received money of his ward, is not required to await the action of the ward, but if he believes himself in jeopardy from his suretyship, he may come into a court of equity for indemnity. The principle of all these cases is, that a court of equity will lend its aid to protect a surety against loss, whenever by the acts or circumstances of his principal, he is in danger of *202 suffering such loss. A surety whose obligations has been incurred from no consideration of benefit to himself, but from motives of kindness to his principal, should not be held bound for an indefinite period, when from the changed condition and circumstances of his principal he has not that security against future loss, upon which he had a right to rely at the time he became bound. The surety has strong equitable claim against his principal for indemnity against probable loss. Especially is this so, when it is in the power of the principal to make present provision for his indemnity, which the surety in the altered condition of his principal’s estate, may be unable to enforce,, if no steps be taken for that purpose until the liability falls due. In becoming bound for Pope, complainant relied not only on his ample property for security, but also on his personal obligation; now his property is about to be distributed, and his executors stand in his place, for whose acts complainant is bound. We are therefore of opinion that the complainant and Speed and Strange are entitled to be exonerated from this. said liability upon the execution of a new and satisfactory bond, with security, or by the payment into court of said fund by the executors of Pope. The decree of the Chancellor will, therefore, be affirmed, with the modification that the Chancellor will accept bond with satisfactory security for the forthcoming of the fund upon the termination of the life estate, and in default of said bond being given, the fund shall be paid into the Chancery Court and loaned out under its order; and this cause will be remanded *203 to the Chancery Court for the execution of its decree-with the modification above indicated, and for such-orders and decrees as may be necessary for that purpose. The executors of Pope and the complainant will each pay one-half of the costs of this Court.